UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

WENDELLA SIGHTSEEING COMPANY, INC., )
                                   )
            Plaintiff,                )
                                     )      Case No.: 1:17-cv-00388-S-LDA
       vs.                            )
                                     )
BLOUNT BOATS, INC.,              )
                                     )
          Defendant.             )

**PLAINTIFF, WENDELLA SIGHTSEEING COMPANY, INC.'S,
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO REMAND**

      Plaintiff, Wendella Sightseeing Company, Inc. (hereinafter "Wendella" or "Plaintiff"),

respectfully submits this Memorandum of Law in Support of Its Motion to Remand this action to

the Providence County Superior Court of Rhode Island.  This Court should remand Wendella's

Miscellaneous Petition to Vacate the Arbitrators' Award (hereinafter "Wendella's Petition to

Vacate") to state court because, as will be shown herein, Defendant, Blount Boats, Inc.

(hereinafter "Blount" or "Defendant")'s removal was defective.  Blount has not removed (and

cannot remove) based on diversity jurisdiction because 28 U.S.C. § 1441(b)(2) prohibits it, and

Wendella's Petition to Vacate does not invoke admiralty jurisdiction.  Moreover, there is no

federal question jurisdiction.  Accordingly, the Court should remand this action to state court.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

      Since 1935, Wendella, an Illinois corporation, has provided architectural boat tours and

water taxi services on the Chicago River and Lake Michigan.  In January of 2006, Wendella

entered into a vessel construction contract with Blount, a Rhode Island boat manufacturer, for the

construction of the M/V *Wendella*, a vessel that would be used in its tour business.  On June 12,

2007, Blount delivered the M/V *Wendella* to Wendella.  Subsequently, in or around September

of 2009, Wendella and Blount entered into a contract for the construction of a second vessel that

was to be identical to the M/V *Wendella*. This vessel was named the M/V *Linnea*. On or about July 20, 2010, Blount delivered to Wendella the M/V *Linnea*.

Subsequently, on or about August 31, 2011, Wendella and Blount entered into a contract for the construction of a third vessel, the M/V *Lila*, which was also supposed to be identical to the M/V *Wendella* and the M/V *Linnea*. On or about July 24, 2012, the M/V *Lila* was delivered to Wendella.

In or around 2007, Wendella experienced problems with the M/V *Wendella*, including the rudder falling off, even though the vessel did not collide with any object. Similarly, after delivery of the M/V *Linnea* and the M/V *Lila*, Wendella also discovered problems with these vessels. Wendella found that Blount had breached the terms of each of the three vessel construction contracts, including the express warranties contained therein, and that such breaches caused Wendella significant damages.

In August of 2012, as a result of Blount's aforementioned contractual breaches, the M/V *Lila* collided with a dock, through no fault of Wendella. The Coast Guard inspected the M/V *Lila* and cited Wendella for various violations in connection with the construction of the vessels. On August 6, 2012, Blount was notified of these defects.

As a result of Blount's breach of the constructions contracts, Wendella sued Blount in the United States District Court for the District of Rhode Island (based on diversity jurisdiction) on July 24, 2013. On October 15, 2013, Blount filed a motion to dismiss that action, seeking that the Court order that all of Wendella's claims be arbitrated. Prior to the motion being decided, and in order to arbitrate pursuant to the arbitration provisions in the three vessel construction contracts, Wendella voluntarily dismissed the federal action *without prejudice*.

2

Pursuant to the three vessel construction contracts, Blount, as builder, and Wendella, as buyer, agreed as follows with respect to arbitration:

> **6.     ARBITRATION:**   Any dispute as to the quality of workmanship and/or materials provided by Builder or the Plans or Specifications, arising out of this Contract and not resolved by agreement within thirty (30) days after notice by either party to the other that such party is considering arbitration for resolution of such dispute, shall be submitted to and settled by arbitration in Providence, Rhode Island, in accordance with the rules of the American Arbitration Association. At the end of the above thirty-day period, one person is to be named arbitrator by Buyer and one by Builder.   The two arbitrators, so named, shall name a third arbitrator.   The first two arbitrators shall be named within five (5) days after expiration of the above thirty (30) day period, and the third arbitrator shall be named within five (5) days after the first two arbitrators shall have been named. The arbitrators selected to act hereunder shall be qualified by education and experience to pass on the particular question in dispute.   Said arbitrators shall render a decision within thirty (30) days after their appointment. The decision of the arbitrators shall be accepted as final.   All fees of arbitration shall be shared equally by Builder and Buyer.

Pursuant to this arbitration provision, the only disputes that are required to be submitted to arbitration are disputes as to the quality of workmanship and/or materials provided by Blount, disputes as to the Plans or Specifications, or disputes arising out of the Vessel Construction Contract.

The Vessel Construction Contracts further contained a provision that set forth the applicable law, which stated:

> **8.     APPLICABLE LAW:**   The Contract is executed in the State of Rhode Island, and its provisions will be determined under Rhode Island law without resort to said state's laws governing conflicts of law.   Each party hereby irrevocably agrees that any legal action or proceedings against them with respect to this Contract be brought in the courts of the State of Rhode Island, or in any United States District Court of Rhode Island, and, by its execution and delivery of this Contract, each party hereby irrevocably submits to each such jurisdiction and hereby irrevocably waives any and all objections which it may have as to venue in any of the above courts. Each party further consents and agrees that any process or notice of motion or other application to either of said Courts or any judge thereof, or any notice in connection with any proceedings hereunder, may be served inside or outside the State of Rhode Island or the District of Rhode Island by registered or certified mail, return receipt requested, postage prepaid, and be

3

effective as of the receipt thereof, or in such other manner as may be permissible under the rules of said Courts.

Pursuant to paragraph 8, the provisions of the vessel construction contracts, including paragraph 6 concerning arbitration, will be determined under Rhode Island law. The parties also "irrevocably submit[ed] to" the jurisdiction of the courts of the State of Rhode Island (including the Rhode Island Superior Court) and to "any United States District Court of Rhode Island", of which there is one. The parties irrevocably waived any and all objections to venue.

On February 13, 2014, counsel for Wendella notified Blount that it was considering arbitration pursuant to paragraph 6 of the relevant vessel construction contracts. On September 19, 2014, Wendella submitted a Demand for Arbitration before the American Arbitration Association under the Commercial Arbitration Rules.

In Wendella's First Amended Statement of the Claim, attached hereto without exhibits as **Exhibit A**, which was submitted in the arbitration, Wendella brought three counts only: (1) fraudulent inducement; (2) breach of written contract; and (3) breach of express warranties. In Count I, "Fraudulent Inducement/LILA Contract," Wendella alleged that Blount expressly represented to Wendella that the M/V *Lila* was a "sister ship" to the M/V *Wendella* and M/V *Linnea*, and was to be virtually identical in design to these prior vessels. *Id.* at ¶¶ 67-72. However, despite these representations, Blount used inferior steel and unlicensed electricians on the M/V *Lila* to increase its profit margin. *Id.* at ¶ 73. If Wendella had known that Blount did not intend to build the M/V *Lila* as a sister ship to the two other vessels, it would not have entered into the contract with Blount. *Id.* at ¶ 74. Therefore, the crux of Count I, is Wendella's allegation that "Blount intentionally deceived Wendella and induced Wendella to enter into the Lila Contract by knowingly misrepresenting to Wendella prior to entering into the Lila Contract that it would build the M/V *Lila* as a sister ship to the M/V *Wendella* and the M/V *Linnea*." *Id.*

4

at ¶ 84.  Further, it is alleged that "Blount knew that Wendella wanted the M/V *Lila* to be identical to its other vessels and that Blount intended that Wendella rely on the false representation that it would build a sister ship in agreeing to enter into the Lila Contract." *Id.* at ¶ 86.  As a result, Wendella "detrimentally relied" on Blount's material misrepresentations. *Id.* at ¶ 87.

In Count II, "Breach of Written Contract," Wendella stated that each of the contracts provided, in relevant part, that the:

> "[b]uilder will build and deliver to Buyer . . . a vessel . . . in accordance with the terms and conditions described herein and in accordance with the plans attached . . . and incorporated herein by this reference, and with the Specifications attached hereto . . . and incorporated herein by this reference . . . ."

*Id.* at ¶ 90.  Wendella alleged that Blount breached each of the three construction contracts "by failing to meet many of the Specifications." *Id.* at 91.

Lastly, in Count III, "Breach of Express Warranties," Blount provided an express "limited warranty" which provided in relevant part,

> "...Builder warrants the Vessel and any machinery, equipment or other parts thereof provided or manufactured by Builder to be free from defects in material and workmanship under normal use and service.  The obligation under this warranty is expressly limited to repairing or causing repair or replacing or causing the replacement of any part which shall be found to be defective and of which Buyer is notified within twelve (12) months after delivery of the Vessel to Buyer."

*Id.* at 102.

After nearly three years in arbitration, on July 5, 2017, the arbitration panel issued a Final Award.  Although Wendella prevailed on some of its claims, the arbitrators failed to award Wendella any of its attorneys' fees and costs, and awarded Blount $837,589.00 in attorneys' fees and costs.  The total Final Award was in favor of Blount in the amount of $807,595.19.

On August 4, 2017, Wendella filed a Miscellaneous Petition to Vacate Arbitrators' Award, attached hereto as **Exhibit B**, in Providence County Superior Court (PM-2017-3651). On August 8, 2017, Blount filed a Petition to Confirm Arbitral Award in this Court. On August 22, 2017, Blount filed a Notice of Removal in the United States District Court for the District of Rhode Island pursuant to 28 U.S.C. § 1446 to remove Wendella's Petition to Vacate to this Court. Blount's alleged ground for removal is that this Court "has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1333, which provides for 'original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction . . . ." *Id.* at ¶ 6. The reasoning that Blount set forth in its Notice of Removal as to why this action invokes admiralty jurisdiction is that Wendella's Petition to Vacate "allege[d] an allision involving the M/V Lila, which occurred on the Chicago River, a navigable waterway" and that Wendella's petition also "allege[d] that a U.S. Coast Guard inspection ensued following the alleged allision." *Id.* at ¶ 7.

## II.    MOTION TO REMAND STANDARD

"When a plaintiff objects to the removal of the suit to federal court, the burden is on the defendant to establish that federal jurisdiction is proper." *Porter v. Am. Heritage Life Ins. Co.*, 956 F. Supp. 2d 344, 346 (D.R.I. 2013) (citing *Amoche v. Guarantee Trust Ins. Co.*, 556 F.3d 41, 48 (1st Cir. 2009). Furthermore, "'the plaintiff is the master of the claim,' meaning that some liberality must be employed in permitting plaintiff to pursue [its] claims in the court of [its] choice." *Id.* at 347 (citing *Rossello-Gonzalez v. Calerson-Serra*, 398 F.3d 1, 11 (1st Cir. 2004)). "In light of the responsibility of federal courts to police the borders of federal jurisdiction, as well as principles of federalism and comity, removal statutes are to be strictly construed against removal." *Hogan v. Wal-Mart Stores E., L.P.*, No. CA 13-603 S, 2014 WL 66658, at *2 (D.R.I. Jan. 8, 2014) (citing *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir.2001); *Porter*, 956 F. Supp. 2d at 347.

6

III.   **ARGUMENT**

Blount's removal of Wendella's Petition to Vacate from state court to federal court was defective.  As will be shown herein, Blount cannot remove this action based on diversity jurisdiction, there is no federal question jurisdiction over this action, and there is no admiralty jurisdiction over this action.

A.   **Blount Cannot Remove This Action Based On Diversity Jurisdiction**

Blount, knowing that it could not have removed this action on the ground that there is diversity jurisdiction, removed this action solely on the basis of admiralty jurisdiction.  Pursuant to 28 U.S.C. § 1441(b)(2), "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) [diversity jurisdiction] of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).  Blount, a Rhode Island corporation with its principal place of business in Warren, Rhode Island, could not have removed (and did not remove) Wendella's state court petition based on diversity jurisdiction because 28 U.S.C. 1441(b)(2) does not allow it.  Blount is a citizen of Rhode Island, the state where Wendella originally commenced this action.

B.   **There Is No Federal Question Jurisdiction Over Petition To Vacate**

Blount also knew that it could not remove this action based on federal question jurisdiction.  It is well-settled that "federal question jurisdiction over controversies involving arbitration cannot be based on the fact that the [Federal Arbitration Act] establishes the relevant substantive law." *Ortiz-Espinosa v. BBVA Securities of Puerto Rico, Inc.*, 852 F.3d 36, 45 (1st Cir. 2017) (citing *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)).  There is simply no federal statute or law upon which federal question jurisdiction may arise.

7

### C.     There Is No Admiralty Jurisdiction Over Petition To Vacate

Blount's sole alleged ground for removing Wendella's state court action was 28 U.S.C.
§ 1333 (admiralty, maritime and prize cases), which states in pertinent part, "[t]he district courts
shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of
admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they
are otherwise entitled." 28 U.S.C. § 1333. Blount cites to *Jerome B. Grubart, Inc. v. Great
Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995) in support of its claim that there is admiralty
jurisdiction over Wendella's petition. However, that case is easily distinguishable. There, a
dredging company caused flooding to an underwater tunnel that was located under the Chicago
river when the company, while located on a barge on the river, drove pilings into the river's
bottom. Afterwards, many individuals whose properties were damaged by the flooding brought
law suits against the company in state court. The company brought a lawsuit in the United States
District Court invoking federal admiralty jurisdiction and seeking protection under the
Limitation of Vessel Owner's Liability Act. The court stated that "a party seeking to invoke
federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) *over a tort claim* must satisfy
conditions both of location and of connection with maritime activity." *Id.* at 534 (emphasis
added). It further stated, "[a] court applying the location test must determine whether *the tort*
occurred on navigable water or whether injury suffered on land was caused by a vessel on
navigable water." *Id.* (emphasis added).

Here, unlike in *Great Lakes*, there is simply no tort that Wendella alleges Blount
committed that was causally related to the allision. Wendella's First Amended Statement of
Claim (hereinafter the "FASAC"), which was submitted in the AAA arbitration, contained only
three claims: (1) Fraudulent Inducement/Lila Contract; (2) Breach of Written Contract; and (3)
Breach of Express Warranties. The FASAC references, among other things, an incident

involving the M/V *Lila* in August of 2012.   Within one week of being put into operation, the

M/V *Lila* allided with the dock wall located at the northwest corner of the Michigan Avenue

Bridge and the Chicago River.   FASAC ¶ 39.   In a section of the FASAC entitled "The

Damages," it stated:

> "[a]lso, as a result of [the M/V *Lila* allision], which was caused by Blount, the
> bow section of the M/V Lila was crushed.  Wendella's insurance carrier had to
> pay a significant amount of money to repair the damage and Wendella had to pay
> its deductible to its carrier.    Additionally, Wendella had to remedy certain
> calibration issues with the engines that were caused by Blount's failure to adhere
> to the terms of the Specifications."

FASAC ¶ 66.

The allision has absolutely nothing to do with Wendella's claim for fraudulent

inducement, the only claim contained in the FASAC that sounds in tort.   With respect to its claim

for breach of contract, Wendella alleges that Blount failed to comply with the terms and

specifications of the vessel construction contracts.   Furthermore, Wendella alleges that "as a

result of Blount's breach of each of the three contracts . . . Wendella has paid a deductible to its

insurance carrier for the damages as a result of the [allision]."  *Id.* ¶ 99.   In Wendella's claim for

breach of express warranties, it states that Wendella has suffered pecuniary losses in connection

with, among other things, the allision "as a result of Blount's breach of its express warranties in

each of the three contracts."  *Id.* ¶ 113.

Because Wendella is not alleging that Blount committed a tort that caused the allision,

Blount's reliance on *Great Lakes* is misplaced.   Wendella is alleging that Blount breached the

vessel construction contracts, and the express warranties contained therein, when it failed to

construct the vessels (including the M/V *Lila*) in accordance with the terms of the contracts, and

that because of these breaches (which breaches occurred on land at Blount's shipyard in Warren,

Rhode Island) Wendella suffered damages, including the damages associated with the allision.   It

9

would be a different matter entirely if Blount had been operating a vessel, and that vessel allided with a vessel that Wendella owned, and Wendella sued Blount in tort because of the allision. However, this case is entirely different. Wendella is suing in contract, not tort.

Moreover, it is well-established that an action pursuant to a contract to construct a vessel does not invoke original maritime or admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1). *See Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961) (holding that a "contract to build a ship" is not maritime). "'[I]n determining whether a contract falls within admiralty, the true criterion is the nature and subject-matter of the contract, as whether it was a maritime contract, having reference to maritime service or maritime transactions.'" *TAG/ICIB Servs., Inc. v. Sedeco Servicio de Descuento en Compras*, 570 F.3d 60, 63 (1st Cir. 2009) (quoting *Exxon Corp. v. Cent. Gulf Lines*, 500 U.S. 603, 610 (1991)). "The Supreme Court has reiterated that 'the fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce.'" *Puerto Rico Ports Auth. v. Umpierre-Solares*, 456 F.3d 220, 224 (1st Cir. 2006) (quoting *Exxon Corp.*, 500 U.S. at 608). Thus, in determining whether a contract falls within maritime jurisdiction, the inquiry is focused on "whether the nature of the transaction was maritime . . . that is, whether the contract relates to the navigation, business or commerce of the sea." *Id.* (citing *Cunningham v. Director, Office of Workers' Compensation Programs*, 377 F.3d 98, 109 n.11 (1st Cir. 2004)) (quotations omitted).

For example, courts have found maritime shipping contracts to be within the purview of admiralty jurisdiction. In *TAG/ICIB Servs., Inc.*, the United States Court of Appeals for the First Circuit found that the federal district court had subject matter jurisdiction over the action because it involved demurrage incurred in connection with a maritime shipping contract. 570 F.3d at 63. In contrast, this present matter clearly does not involve a maritime shipping contract, but instead a contract to construct vessels. It is well established that "a contract to construct a ship falls

10

outside of federal jurisdiction because it is a 'contract made on land, to be performed on land.'" *La Esperanza de P.R., Inc. v. Perez y Cia. De Puerto Rico., Inc.*, 124 F.3d 10, 16 (1997) (quoting *People's Ferry Co. of Boston v. Beers*, 61 U.S. 393, 401 (1857)); *see also Kossick*, 365 U.S. at 735. Here, the contracts at issue were entered into on land and the performance of the contracts, which was building the specified boats, was also conducted on land. Therefore, this Court does not have admiralty jurisdiction over Wendella's Petition to Vacate.

## IV.   **CONCLUSION**

Because there is no admiralty jurisdiction, and because Blount cannot remove this case on the basis of diversity jurisdiction (Blount is a Rhode Island citizen) and/or federal question jurisdiction, this Court should remand Wendella's Petition to Vacate to the Providence County Superior Court of Rhode Island.

WENDELLA SIGHTSEEING COMPANY, INC.
By its Attorneys,


/s/ Paul S. Callaghan
Paul S. Callaghan, Esq. #4931
J. David Freel, Esq., #7977
HIGGINS, CAVANAGH & COONEY, LLP
10 Dorrance Street, Suite 400
Providence, RI 02903
(401) 272-3500
(401) 273-8780 (fax)
pcallaghan@hcc-law.com
dfreel@hcc-law.com

and

/s/ Stuart P. Krauskopf
Stuart P. Krauskopf, *Pro Hac Vice*
Krauskopf Kauffman, P.C.
414 North Orleans Street, Suite 210
Chicago, IL  60654
(312) 377-9592
(312) 264-5618 (fax)
stu@stuklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the within document was electronically submitted to the Electronic Case Filing System of the United States District Court for its distribution to the following counsel of record on this 28th day of August 2017:

Robert M. Duffy, Esquire
DUFFY & SWEENEY, LTD
One Financial Plaza, Suite 1800
Providence, RI 02903

/s/ Angela M. DiCarlo